**UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DIAMOND B. COLLINS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAWX, LLC d/b/a HAWX PEST CONTROL, LLC<br><br>Defendant. | Case No.1:21-cv-05401 |

## CLASS ACTION COMPLAINT

**NOW COMES**, DIAMOND B. COLLINS ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her undersigned counsel, complaining of HAWX, LLC d/b/a HAWX PEST CONTROL, LLC ("Defendant"), as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) citing Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises under the TCPA, a federal statute.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) as Defendant resides in this judicial district.

## PARTIES

6. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Fayetteville, North Carolina.

7. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant is a limited liability company that maintains its principal place of business in West Chicago, Illinois.

9. Defendant provides pest control services to consumers in numerous states in the United States, including Illinois and North Carolina.

10. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

11. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 9418.

12. At all times relevant, Plaintiff's number ending in 9418 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

14. In early 2020, Plaintiff signed up for pest control services with Defendant.

15. Plaintiff soon discovered that Defendant's services were ineffective as she noticed more bugs after Defendant commenced its services than prior to the commencement of Defendant's services.

16. In August or September 2020, Plaintiff called Defendant and stated that she no longer needed Defendant's services.

17. In response, Defendant offered to send another technician to her home to repeat the treatment.

18. Plaintiff declined Defendant's offer and Defendant agreed to honor Plaintiff's cancellation request.

19. At that time of cancellation, Defendant advised Plaintiff that she did not owe any money and that she would not be billed further.

20. In September 2020, for reasons unknown to Plaintiff, Defendant sent another technician to her home after she cancelled Defendant's services.

21. Before the technician arrived, Plaintiff received an email from Defendant stating that a technician was on the way to her home.

22. Plaintiff immediately called Defendant and inquired as to the reason Defendant was sending another technician considering Plaintiff cancelled Defendant's services.

23. Defendant apologized and stated that the system must not have been updated properly.

24. When the technician arrived at Plaintiff's house, Plaintiff asked that the technician leave.

25. The technician stated that he was required to walk around Plaintiff's home and take pictures. In response, Plaintiff advised the technician that she does not authorize him to walk

around her home and take pictures and again requested that the technician leave her property. The technician complied with Plaintiff's request and left Plaintiff's home.

26. In September 2020, Plaintiff sent a letter to Defendant reiterating that she cancelled her services and requested that Defendant no longer (1) come to her home, (2) email her, (3) call her, or (4) contact her in any way.

27. In October 2020, Plaintiff started receiving collection calls from Defendant in an attempt to collect a balance allegedly due on her account ("subject debt").

28. Plaintiff answered some of Defendant's collection calls and disputed that she owed a balance on the account.

29. Whenever Plaintiff asked for a breakdown of the charges, Defendant was unable to provide Plaintiff with an itemization or otherwise substantiate the balance that Defendant sought to collect from Plaintiff.

30. Despite Plaintiff's dispute of the subject debt and Defendant's failure to substantiate it, Defendant continued placing collection calls to Plaintiff's cellular phone.

31. When Plaintiff answered Defendant's erroneous collection calls, Plaintiff was greeted with an automated message asking Plaintiff to wait for a live representative.

32. In unanswered calls, Defendant left prerecorded voicemails on Plaintiff's cellular phone stating:

> "Hello, this is Hawx Services calling in regards to the balance on your account. We would love to help you take care of this. Please give us a call at [phone number] or pay on your online portal at hawx.pestportals.com. That's Hawx, h-a-w-x.pestportal.com. Thank you."

33. All of Defendant's prerecorded messages were 22 seconds long and delivered the same message described in Paragraph 32.

34. In addition to the prerecorded calls and voicemails, Defendant also sent Plaintiff text messages in an effort to collect the subject debt.

35. All of Defendant's collection calls were placed from the phone number (801) 689-3100.

36. On June 24, 2021, frustrated with the incessant calls and text message from Defendant, Plaintiff sent another cease-and-desist letter.

37. Plaintiff's second letter fell on blind eyes and Defendant continued to place erroneous prerecorded calls to Plaintiff's cellular phone.

38. To date, Plaintiff has received over 100 prerecorded phone calls and voicemails from Defendant ("robocalls") after she initially requested that Defendant cease contact with her in September 2020.

39. Defendant's incessant robocalls have invaded Plaintiff's privacy and have caused Plaintiff actual harm, including but not limited to, aggravation that accompanies unsolicited robocalls, increased risk of personal injury resulting from the distraction caused by the robocalls, wear and tear to Plaintiff's cellular phone, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular telephone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

40. Moreover, each time Defendant placed a robocall to Plaintiff's cellular phone, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize her cellular phone while her phone was ringing.

41. Due to Defendant's refusal to honor Plaintiff's requests that it cease contact with her, Plaintiff was forced to retain counsel and file this action to compel Defendant to cease its invasive practices.

**CLASS ALLEGATIONS**

42. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

43. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All persons throughout the United States (1) to whom Defendant placed, or caused to be placed, a call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) without his/her consent; (5) within the four years preceding the date of this Complaint through the date of class certification.

44. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A. Numerosity**

45. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

46. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and can only be determined through targeted discovery.

47. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

48. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant.

**B. Commonality and Predominance**

49. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class.

50. Those questions predominate over any questions that may affect individual members of the Putative Class.

**C. Typicality**

51. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

**D. Superiority and Manageability**

52. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

53. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

54. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation**

56. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

57. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

58. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I:
### Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq*.)
### (On behalf of Plaintiff and the Members of the Putative Class)

59. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

60. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than one-hundred (100) non-emergency robocalls to Plaintiff's cellular telephone utilizing an artificial or prerecorded voice without Plaintiff's consent.

61. As pled above, Defendant used an artificial or prerecorded voice that automatically played upon Plaintiff answering the call or upon the call reaching Plaintiff's voicemail.

62. As pled above, Defendant did not have consent to place robocalls to Plaintiff's cellular phone as Plaintiff requested that Defendant cease *all* contact with her on multiple occasions (in writing).

63. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

64. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA yet continued to employ them to maximize efficiency and profits at the expense of Plaintiff and the Putative Class.

65. As pled above, Plaintiff was harmed by Defendant's unlawful collection calls.

**WHEREFORE**, Plaintiff, DIAMOND B. COLLLINS, on behalf of herself and the members of the Putative Class, requests the following relief:

a. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

b. a judgment in her favor finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

c. an order enjoining Defendant from placing further unlawful calls to Plaintiff and the members of the Putative Class;

d. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each such violation;

e. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

f. an award of such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Date: October 12, 2021

Respectfully submitted,

**DIAMOND B. COLLINS**

By: _/s/ Mohammed O. Badwan_

Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*